## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Appliance Recycling Centers of
America, Inc.,

                Plaintiff,             **MEMORANDUM OF LAW &**
                                          **ORDER**

v.                                   Civil File No. 11-888 (MJD/JSM)

AMTIM Capital, Inc.,

                Defendant.

---

Denis E. Grande, Patrick B. Steinhoff, and Timothy J. Grande, Mackall, Crounse
& Moore, PLC, Counsel for Plaintiff.

Christina Rieck Loukas and Jeffrey R. Ansel, Winthrop & Weinstine, PA, Counsel
for Defendant.

---

## I.     INTRODUCTION

This matter is before the Court on Defendant AMTIM Capital, Inc.'s

Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, for Forum Non

Conveniens [Docket No. 2]. Oral argument was heard June 3, 2011. For the

reasons articulated below, the Court will deny the motion.

## II.     FACTUAL BACKGROUND

### A. Parties

Plaintiff Appliance Recycling Centers of America, Inc. ("ARCA") is a Minnesota corporation, which is in the business of collecting, disposing and recycling major appliances.  Additionally, ARCA is engaged in the retail sale of major appliances through the operation of nineteen retail stores in four metropolitan areas.  ARCA conducts operations in Canada through its subsidiary ARCA Canada, Inc. ("ARCA Canada").

Defendant AMTIM Capital, Inc. ("AMTIM") is a Canadian corporation organized under the laws of the Province of Ontario, Canada.  AMTIM is a management consulting company.  In this capacity, AMTIM has contracted with ARCA to solicit and manage contracts for the provision of ARCA's recycling services in Canada.  AMTIM is not registered to do business in Minnesota, has never had any offices, employees, or agents in Minnesota, has never had a bank account, assets, phone number, or mailing address in Minnesota, has never owned or leased property in Minnesota, has never paid taxes in Minnesota, and, prior to this lawsuit, has never been sued or brought suit in Minnesota.

### B.  Contracts Between ARCA and AMTIM

In 2004 AMTIM contacted ARCA, in Minnesota, to express an interest in working with ARCA to develop an appliance recycling program in Ontario.  The

parties agreed to start a pilot program to determine the viability of the proposed

business relationship.  Following the success of this program, the parties agreed

to continue working together.  In 2007, ARCA Canada began recycling major

appliances in Ontario, pursuant to a contract between ARCA and the Ontario

Power Authority ("OPA").  In conjunction with its contract with the OPA, ARCA

entered into two contracts with AMTIM on September 24, 2007, the Amended

and Restated Sales Representation Agreement and the General Management

Agreement (collectively the "Contracts").  The negotiations of the Contracts took

place in Ontario, with the final draft being prepared by AMTIM's counsel in

Ontario.  The Contracts were executed by AMTIM's director, Joseph Berta

("Berta") in Toronto, and by ARCA's president and Chief Executive Officer,

Edward Cameron ("Cameron") in Minnesota.

　　　The Contracts contain numerous provisions concerning their scope,

services, and choice of law.  In particular, the Contracts both have provisions

stating "[t]his Agreement involves AMTIM's representation of ARCA's Services

only within the Country of Canada."  (Berta Aff. Exs. C and D, Territory.)

Moreover, each contract states that the Contracts are limited to ARCA's services

in Canada.  The Amended and Restated Sales Representation Agreement states

"ARCA authorizes AMTIM to facilitate and assist with the solicitation of contracts to provide ARCA's Services to potential Customers based in the Country of Canada." (Id. Ex C, Scope.)  The General Management Contract states "ARCA authorizes AMTIM to facilitate and assist with the management of all contracts entered into by ARCA that provide for ARCA's Services to be supplied in Canada." (Id. Ex. D, Scope.)  Finally, both Contracts provide that "[i]n the event of any dispute arising from the interpretation of this Agreement and performance of party, the validity and terms of this Agreement shall be governed by and enforced under the laws of the Province of Ontario." (Id. Ex. C and D, Governing Law.)

Pursuant to the Contracts, AMTIM is obligated to manage the Canadian operations of ARCA and ARCA Canada.  In exchange for providing these services, ARCA is required to compensate AMTIM as provided in the Contracts. Specifically, the Contracts sets forth that ARCA is to pay AMTIM a guaranteed sum pursuant to a formula set forth in the Contracts.  ARCA asserts that it has made payments to AMTIM in the amount of $162,999.07 for 2007, $775,853.40 for 2008, $638,887.28 for 2009, $434,528.24 for 2010, and $122,442.36 for 2011 to date.

4

ARCA states that it has made these payments monthly since the Contracts were executed in 2007.

Additionally, the Contracts provide that AMTIM is eligible to receive "Performance Fees" equal to a share of the net profits generated by ARCA's Canadian operations before taxes, if those net profits exceed a certain threshold. The Contracts state that net profits are to be calculated "by subtracting total expenses of the Canadian Operations from total revenue before taxes of the Canadian Operations." (Berta Aff. Ex. D, Compensation and Payment.) Furthermore, the Contracts provide that net profits are to "be calculated in accordance with generally accepted accounting principles ("GAAP") of the USA." (Id.)

Since approximately August 2009, Berta has objected to the method by which ARCA has calculated its net profits. In particular, AMTIM has stated that ARCA is impermissibly allocating amounts of ARCA's corporate overhead to the expenses of the operations of ARCA Canada in order to minimize the Performance Fee compensation ARCA is required to pay AMTIM. The parties attempted to resolve this dispute through voluntary mediation in Ontario. This mediation was ultimately unsuccessful, at which point AMTIM advised ARCA

that the next step was litigation, but offered to arbitrate the matter.  Subsequent

to this offer, on March 9, 2011, ARCA filed this lawsuit in Hennepin County

District Court.  On March 29, 2011, AMTIM filed a Statement of Claim against

ARCA in the Superior Court of Justice, Ontario, Canada.

### C. Procedural History

ARCA originally filed its Complaint against AMTIM in Hennepin County

District Court.  The action was removed to this Court by AMTIM on April 11,

2011 [Docket No. 1].  ARCA's Complaint alleges two counts, both seeking

declaratory judgments against AMTIM.  Count I seeks a declaratory judgment

which would declare that the formulas and methodology used by ARCA to

calculate total corporate overhead expenses comply with the terms of the

Contracts.  Count II seeks a declaratory judgment which would declare that the

compensation paid by ARCA to AMTIM was correctly calculated, and that

ARCA is not obligated to pay AMTIM additional compensation for AMTIM's

past services.  On April 18, 2011, AMTIM filed a Motion to Dismiss for Lack of

Jurisdiction, or in the Alternative, for Forum Non Conveniens [Docket No. 2].

## III.   DISCUSSION

### A. Personal Jurisdiction

### 1. Personal Jurisdiction Standard

While the plaintiff eventually bears the burden to establish personal jurisdiction by preponderance of the evidence, when personal jurisdiction is decided based upon affidavits, prior to an evidentiary hearing, the plaintiff need only establish a prima facie showing of personal jurisdiction.  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).  "[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party."  Id. (citations omitted).

"A two-step inquiry is employed when determining whether a federal court has jurisdiction over a non-resident party: (1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the nonresident has 'minimum contacts' with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process."  Soo Line Railroad Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citation omitted).  The Minnesota long-arm statute extends jurisdiction to the fullest extent permitted by the due process clause.  Id.  Thus, the Court need only determine whether the due process clause allows jurisdiction in this case.

The Eighth Circuit has explained:

> The due process clause requires there be minimum contacts between the defendant and the forum state before the forum state may exercise jurisdiction over the defendant.  Sufficient contacts exist when the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice.  In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Id. at 528-29 (citations omitted).

In order to determine whether the exercise of jurisdiction comports with due process, the Court examines five factors:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003) (citation omitted).  The first three factors are the primary factors in the analysis; the last two factors are secondary consideration.  Id.

A court can exercise either specific or general personal jurisdiction over a party.  "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while [g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action

8

involving a particular defendant, regardless of where the cause of action arose."
Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).  General
personal jurisdiction exists when a party has "continuous and systematic"
contacts with the forum state.  Id.  In the instant case, neither party argues that
AMTIM is subject to general jurisdiction in Minnesota.  Thus, the only
jurisdictional issue before the Court is whether it may exercise specific personal
jurisdiction over AMTIM.

### 2.  Nature, Quality, and Quantity of AMTIM's Contacts

"Merely entering into a contract with a forum resident does not provide
the requisite contacts between a [nonresident] defendant and the forum state."
Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 922 (8th Cir. 1995)
(citation omitted).  "Personal jurisdiction, moreover, does not turn on
'mechanical tests or on conceptualistic theories of the place of contracting or of
performance.'"  K-V Pharm. Co. v. J Uriach & CIA, S.A., --- F.3d ----, 2011 WL
3300689 (8th Cir. Aug. 3, 2011) (quoting Burger King Corp. v. Rudzewicz, 471
U.S. 462, 478 (1985)).

AMTIM argues that the nature, quality, and quantity of its contacts with
Minnesota do not justify the exercise of specific personal jurisdiction.  AMTIM

defines its contact with Minnesota as entering a contract with a Minnesota corporation, a few visits to Minnesota, and communication with a Minnesota corporation via telephone and email.

AMTIM argues that it specifically chose not to avail itself of the protections and benefits of Minnesota's laws, because each of the contracts contains a clause which states that "[i]n the event of any dispute arising from the interpretation of this Agreement and performance of party, the validity and terms of this Agreement shall be governed by and enforced under the laws of the Province of Ontario." (Berta Aff. Exs. C and D.)

Additionally, AMTIM contends that a few visits, phone calls, and emails to ARCA do not provide sufficient contacts to allow the Court to exercise personal jurisdiction. "The use of interstate facilities, such as telephones or mail, is a secondary or ancillary factor and cannot alone provide the minimum contacts required by due process." <u>Bell Paper Box</u>, 53 F.3d at 922 (internal quotation marks and citation omitted). However, these types of communications may be considered in conjunction with other contacts to establish personal jurisdiction. <u>Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A.</u>, 51 F.3d 1383, 1388 (8th Cir. 1995).

At this stage, taking the facts in the light most favorable to ARCA, the Court finds that the nature, quality, and quantity of AMTIM's contacts weigh in favor of exercising personal jurisdiction.  The business relationship between ARCA and AMTIM was initiated by AMTIM in 2004, when Berta contacted ARCA, in Minnesota, to present a possible business deal.  This business relationship has continued to the present date.  Additionally, since the execution of the Contracts, Berta has been in near daily communication with ARCA's Minnesota-based employees.  Berta suggests that these contacts are in his contractual role as managing director of ARCA Canada, and are not intended to facilitate AMTIM's business with a Minnesota company.  This argument makes too fine a distinction between Berta's role with AMTIM and his role with ARCA Canada.  From the parties affidavits it is unclear at what point Berta's actions are on behalf of ARCA Canada and when they are on behalf of AMTIM.  Looking at the facts in the light most favorably to ARCA, it appears that AMTIM has near daily contacts with ARCA's Minnesota-based employees.  While these contacts on their own may not justify personal jurisdiction, when considered in connection with AMTIM's other contacts with Minnesota they can support the exercise of personal jurisdiction.

Additionally, again looking at the facts in the light most favorably to

ARCA, it appears that AMTIM relies on the Minnesota-based support staff of

ARCA to manage ARCA Canada.  Berta argues that the services provided by

ARCA's Minnesota based employees are only provided for the operation of

ARCA Canada and not the operation of AMTIM's business.  Once again this is

too fine of a distinction.  Berta in his own affidavit states that AMTIM uses these

services in managing ARCA Canada.  (Berta Supp. Aff. ¶ 5.)  Without provision

of these services it appears that ARCA Canada could not operate, and there

would be no company for AMTIM to manage.  Thus, AMTIM has minimum

contacts with Minnesota and AMTIM's contacts with Minnesota weigh in favor

of personal jurisdiction.

### 3.   The Relation of the Cause of Action to the Contacts

AMTIM argues that the underlying dispute in this case concerns the

interpretation and performance of the Contracts.  AMTIM notes that the

Contracts were negotiated, partly executed, accepted, and performed in Canada,

and further provide that they are to be interpreted pursuant to the laws of the

Province of Ontario.  Under these circumstances, AMTIM contends that the

relationship of the cause of action to the contacts is insufficient.

AMTIM directs the Court to <u>Sybaritic, Inc. v. Interport Int'l, Inc.</u>, in which the Eighth Circuit affirmed a district court's dismissal for lack of personal jurisdiction where the only contacts with Minnesota by the defendant were one trip to Minnesota followed by telephone and mail communication between defendant and plaintiff.  957 F.2d 522, 524-25 (8th Cir. 1992).  In <u>Sybaritic</u>, the defendant contacted the plaintiff, a Minnesota company, visited Minnesota to discuss a potential business relationship, and subsequent to that visit contacted the plaintiff a number of times by telephone and mail sent to Minnesota.  <u>Id.</u> at 523.  Ultimately, the contract between the two parties was signed in Japan, and was to be performed in Japan.  <u>Id.</u>  Given these contacts with Minnesota the district court determined that it did not have personal jurisdiction over the defendant, and the Eighth Circuit affirmed.  <u>Id.</u> at 524-25.  AMTIM argues that, similar to the defendant in <u>Sybaritic</u>, its contacts are limited to phone calls, emails, a few visits, and a contractual relationship with ARCA.  Accordingly, AMTIM argues that its contacts are "too few in number and too attenuated from the cause of action to support jurisdiction."  <u>Id.</u> at 525.

The Court finds that the facts of this case are distinguishable from the facts of <u>Sybaritic</u>.  As the Eight Circuit has recently stated, the defendant's contacts in

Sybaritic, only involved preliminary negotiations.  K-V Pharm., --- F.3d ----, 2011 WL 3300689, at *7 (8th Cir. Aug. 3, 2011) (citing Sybaritic, 957 F.2d at 525).  In contrast, AMTIM's contacts go beyond preliminary negotiations.  AMTIM contacts ARCA's Minnesota-based employees on a near daily basis in order to facilitate its management of ARCA Canada's operations pursuant to the Contracts.  These contacts do not simply relate to the preliminary negotiations of the Contracts, but rather are integral for the performance of the Contracts.  In this way, AMTIM's contacts are distinguishable from defendant's contacts in Sybaritic.

In this case, the Court finds that the cause of action arises from AMTIM's contacts with Minnesota.  "[E]ntering into a contract with a Minnesota resident can justify the exercise of specific jurisdiction but only where the dispute involves the contract."  Marshall v. Inn on Madeline Island, 610 N.W.2d 670, 676 (Minn. Ct. App. 2000).  The claims in this case concern the interpretation of the Contracts between the parties.  All of AMTIM's contacts with Minnesota arise from its obligation to manage ARCA's Canadian operation pursuant to the Contracts.  Thus, the cause of action relates to AMTIM's contacts with Minnesota, and this factor weighs in favor of personal jurisdiction.

### 4. The Interests of the Forum State

Minnesota has a strong interest in providing a forum for its citizens. Marshall, 610 N.W.2d at 676 (citation omitted). This factor weighs in favor of jurisdiction.

### 5. Convenience of the Parties

AMTIM argues that Minnesota is not a convenient forum to adjudicate the case because nearly all of the relevant evidence and witnesses are in Canada. ARCA responds by stating that this lawsuit is about the accounting practices of ARCA, as opposed to the operational obligations of the Contracts. ARCA asserts that the dispute in this law suit is focused solely on whether or not ARCA's corporate accounting practices comply with GAAP and the terms of the Contracts. Accordingly, ARCA asserts that the testimony of its accountants will be integral to the case. ARCA notes that all of its corporate accountants are located in Minnesota, as are all of its accounting records.

From the record before the Court, the convenience of the parties does not weigh in favor of either party. AMTIM asserts that the majority of the evidence and the witnesses are located in the Canada, while ARCA states that these things are located in Minnesota. At this stage of the litigation, and based on the

affidavits of the parties it is not possible at this time to determine which

argument is correct.  Thus, this factor does not weigh in favor of either party.

### 6.  Conclusion

Since all the factors either weigh in favor of personal jurisdiction over

AMTIM, or are neutral, the Court denies AMTIM's motion to dismiss for lack of

personal jurisdiction.

### B.  Forum Non Conveniens

### 1.  Forum Non Conveniens Standard

A federal court has discretion to dismiss a case on the ground of
forum non conveniens "when an alternative forum has jurisdiction
to hear [the] case, and . . . trial in the chosen forum would establish
. . . oppressiveness and vexation to a defendant . . . out of all
proportion to plaintiff's convenience, or . . . the chosen forum [is]
inappropriate because of considerations affecting the court's own
administrative and legal problems."

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007)

(quoting Am. Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994)).  "Initially, the

district court must determine whether an adequate, alternative forum is available

to hear the case."  Fluoroware, Inc. v. Dainichi Shoji K.K., 999 F. Supp. 1265, 1271

(D. Minn. 1997) (citing Reid-Walen v. Hansen, 933 F.2d 1390, 1393 n.2 (8th Cir.

1991)).  "An alternative forum is available if all parties are amendable to process

and come within the jurisdiction of that forum." Id. at 1271 (citing Reid-Walen, 933 F.2d at 1393 n.2).  An alternative forum is considered adequate if "the parties will not be deprived of all remedies or treated unfairly." Reid-Walen, 933 F.2d at 1393 n.2.

Once a district court makes a determination that an adequate, alternative forum exists it "must then balance factors relative to the convenience of the litigants, referred to as the private interests, and factors relative to the convenience of the forum, referred to as the public interests, to determine which available forum is most appropriate for trial and resolution." De Melo v. Lederle Labs., 801 F.2d 1058, 1061 (8th Cir. 1986).  The private factors that a district court is to consider include:

(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining attendance of willing witnesses;

(3) possibility to view the premises, if view would be appropriate;

(4) all other problems that make trial of a case easy, expeditious and inexpensive; and

(5) questions as to the enforceability of a judgment if one is obtained.

K-V Pharm., --- F.3d ----, 2011 WL 3300689, at *8 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  The public factors include:

> (1) the administrative difficulties flowing from court congestion;
>
> (2) the "local interest in having localized controversies decided at home;"
>
> (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;
>
> (4) the avoidance of unnecessary problems in conflicts of law or in the application of foreign law; and
>
> (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981) (citing Gulf Oil, 330 U.S. at 509).

"The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens."  K-V Pharm., --- F.3d ----, 2011 WL 3300689, at *8 (citation omitted).  A district court is to give deference to a plaintiff's choice of forum.  Fluoroware, 999 F. Supp. at 1272 (citing Gulf Oil, 330 U.S. at 508).  "[T]he doctrine is to be applied only in 'exceptional circumstances.'"  K-V Pharm., --- F.3d ----, 2011 WL 3300689, at *8.  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  Gulf Oil, 330 U.S. at 508.

## 2. Adequate, Alternative Forum

AMTIM asserts that an adequate, alternative forum exists in Ontario,

Canada, because AMTIM is amenable to process, Ontario offers a remedy for

ARCA's claims, and ARCA will be treated fairly in Ontario courts.  See EFCO

Corp. v. Aluma Sys. USA, Inc., 145 F. Supp. 2d 1040, 1043 (S.D. Iowa) ("That

Canada provides an adequate alternative forum is not in dispute.").  ARCA does

not argue that Canada would not provide an adequate alternative forum in this

case.  Accordingly, the Court finds that Canada is an adequate, alternative

forum.

## 3. Private Interest Factors

AMTIM argues that all of the private interest factors weigh in favor of

dismissing this case based on forum non conveniens.  Initially, AMTIM asserts

that the majority of the evidence in this case is located in Canada.  In particular,

AMTIM highlights that all the records concerning invoices, payments, and

calculations of payments are in Canada, as are the records concerning the

Canadian operations of ARCA Canada.  Moreover, AMTIM contends that the

majority of the witnesses are located in Canada.  However, since this lawsuit

relates to whether or not ARCA's allocations of corporate overhead expenses to

ARCA Canada are consistent with GAAP, and conform to the terms of the

Contracts, testimony of ARCA's accountants will be necessary.  As ARCA's

accountants and its accounting records are in Minnesota a significant amount of

evidence in this case is located in Minnesota.  Accordingly, the Court finds that

the factors dealing with the location of the evidence does not weigh in favor of

either party.

      With regard to the viewing of the premises, the Court finds that this factor

is inapplicable to the case at hand.  The dispute in this case is about the

interpretation of the Contracts, and the method used by ARCA to allocate

overhead expenses to its Canadian subsidiary.  Accordingly, a viewing of the

premises is not necessary in this case.

      Further, AMTIM argues that the issues which make trial of a case easy,

expeditious, and inexpensive favor Canada as the appropriate forum for this

case, because the Contracts are governed by and enforced under Canadian law,

and thus argues that it would be far easier to try this case in a Canadian court.

Although the Court recognizes that the Contracts state that they are to be

governed and enforced under Canadian law, the Court is "quite capable of

applying foreign law when required to do so."  <u>Lehman v. Humphrey Cayman,</u>

<u>Ltd.</u>, 713 F.2d 339, 345 (8th Cir. 1983) (citation omitted).  Accordingly, the Court does not find that this factor weighs in favor of dismissal.

Finally, with regard to the enforceability of an obtained judgment, AMTIM argues that if ARCA obtained a judgment in this Court it would then need to file an enforcement action in Canada, because the Contracts are to be enforced under the laws of Ontario.  AMTIM however, fails to specifically explain why a judgment of this Court would not be enforceable in Canada.  Accordingly, the Court finds that this factor does not favor dismissal of the case pursuant to the doctrine of forum non conveniens.

### 4.  Public Interest Factors

AMTIM argues that the public interest factors also favor dismissing this case on the grounds of forum non conveniens.  AMTIM asserts that Canada's interest in having this case decided in Canada is strong, because the dispute and underlying business relationship between the parties are completely confined to Canada.  Additionally, AMTIM asserts that the Contracts explicitly state that they are to be enforced under the laws of Ontario, and Canada has an interest in the enforcement of its laws.  However, despite Canada's interest, Minnesota also has a strong interest in providing a forum for its citizens to litigate claims against

non-residents.  Reid-Walen, 933 F.3d at 1400.  Accordingly, each forum has an

interest in having the case decided within the forum.  Thus, the Court does not

find that this factor favors dismissal.  Furthermore, any burden to Minnesota is

tempered by the State's interest in resolving the case in Minnesota.  K-Tel Int'l,

Inc. v. Tristar Prods., Inc., 169 F. Supp. 2d 1033, 1044 (D. Minn. 2001).

Additionally, AMTIM argues that the factor concerning litigating the case

in a forum which is at home with the law clearly favors dismissal, because the

Contracts are governed by the laws of Ontario.  It is certainly true that "[t]he

applicability of Canadian law weighs in favor of a Canadian forum."  EFCO

Corp., 145 F. Supp. 2d at 1050.  However, "it is well settled that the fact a federal

court may have to apply foreign law is not dispositive on the forum non

conveniens inquiry, and does not outweigh more significant private interest

concerns."  Reid-Walen, 933 F.3d at 1401.  As stated above, the Court is "quite

capable of applying foreign law when required to do so."  Lehman, 713 F.2d at

345 (citation omitted).  Accordingly, although the fact that the Court would need

to apply Canadian law favors a Canadian forum, the Court finds that this fact

does not dictate that this case should be dismissed, because the Court is capable

of applying Canadian law, and the other above mentioned factors do not favor

dismissal.

The remaining public factors do not apply because there is no indication of

court congestion in either forum and there is no conflict of law issues because of

the choice of law provisions in the Contracts.

### 5.  Conclusion

Since ARCA's choice of forum is to be given substantial deference, and

since the private and public interest factors in totality do not strongly weigh in

favor of a Canadian forum, the Court will deny AMTIM's motion to dismiss

based on the doctrine of forum non conveniens.

## IV.   CONCLUSION

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

Defendant AMTIM Capital, Inc.'s Motion to Dismiss for Lack of
Jurisdiction, or in the Alternative, for Forum Non Conveniens
[Docket No. 2] is **DENIED**.


Date:   August 20, 2011                         s/ Michael J. Davis
                                                Michael J. Davis
                                                Chief Judge
                                                United States District Court